UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

William H. Farley,

                                              Plaintiff,

    -v.-                                              6:05-CV-0492
                                                              (NPM)
Commissioner of Social Security,

                                              Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR THE PLAINTIFF: | |
| Murad & Murad Law Firm<br>291 Genesee Street<br>Utica, New York 13501 | Frederick W. Murad |
| FOR THE DEFENDANT: | |
| Andrew T. Baxter<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261-7198 | William H. Pease, AUSA |
| Barbara L. Spivak<br>Chief Counsel - Region II<br>Office of the General Counsel<br>26 Federal Plaza – Room 3904<br>New York, New York 10278 | Dennis J. Canning,<br>Assistant Regional Counsel |

Neal P. McCurn, Senior District Judge

### *Memorandum, Decision and Order*

### *I. Introduction*

By this action, plaintiff William H. Farley ("plaintiff") timely seeks judicial review of a final decision by defendant, Commissioner of Social Security ("the Commissioner"), denying his application for Social Security Disability Insurance ("SSDI") benefits for lack of disability, pursuant to 42 U.S.C. §§ 405(g). Presently before the court is a motion for judgment on the pleadings by plaintiff, and a cross-motion for judgment on the pleadings by the Commissioner, pursuant to Fed. R. Civ. P. 12(c). Plaintiff seeks an order granting his motion for judgment on the pleadings, reversing the Commissioner's decision that he is not disabled within the meaning of the Social Security Act and remanding this case to the Social Security Administration ("SSA") for calculation and payment of benefits. The Commissioner opposes, and seeks an order affirming its decision. The parties have filed their respective briefs, including the Administrative Record on Appeal, and the matter has been submitted and considered without oral argument. For the reasons set forth below, the Commissioner's finding that plaintiff is not disabled within the meaning of the Social Security Act is affirmed.

### *II. Procedural Background*

Plaintiff initially applied for SSDI benefits on June 25, 2003. (R. 48-50). The application was denied, and plaintiff timely requested a hearing, which was held before an Administrative Law Judge ("ALJ") on March 11, 2004. (R. 218-270). On August 12, 2004, the ALJ issued a decision, finding that plaintiff is not disabled, (R. 13-28), which became the final decision of the Commissioner on April

2

28, 2005 when the Appeals Council denied plaintiff's request for review. (R. 5-8). This timely civil action followed.

### III. Factual Background

Plaintiff Farley, born August 16, 1969, was 34 at the time of the Commissioner's decision at issue here. (R. 48). Plaintiff, who reads at a third or fourth grade level, completed his education through the twelfth year of high school, where he participated in special education classes. (R. 64, 225-226). Plaintiff has past relevant work experience as a heavy machine operator. (R. 59). Plaintiff alleges that he has been unable to work due to a disability since July 8, 2002 (R. 58, 228). According to plaintiff, several medical conditions keep him from working, including traumatic and degenerative disc disease with epidural injection site scarring, hypertension, obesity, and chronic depression. (R. 127).

Plaintiff alleges that he can lift only five to ten pounds frequently or occasionally and that he can stand or walk two hours and sit two hours out of an eight hour workday. (R. 91). Plaintiff also alleges that he can walk a half mile and then rest ten minutes before continuing. (R. 86, 91). During his hearing, plaintiff testified that he can stand, sit or walk between thirty to forty-five minutes at a time, but that he can only rotate standing, sitting or walking for a couple of hours because he will have to lay down. (R. 246-247). Plaintiff testified that he lays down in the morning and in the afternoon for approximately an hour at a time. (R. 247). Plaintiff also testified that the heaviest weight he can lift amounts to about two bags of groceries and a one gallon bottle of water. (R. 248).

Regarding activities of daily living, plaintiff prepares two meals per day and helps with preparing a third meal. (R. 81-82, 92). Plaintiff also does some house

cleaning, such as dishes and laundry, although he is unable to lift laundry baskets and cannot always take laundry out of the dryer if his back is hurting. (R. 82, 92). In addition, plaintiff goes grocery shopping one to two times per week, typically for one to two hours at a time. (R. 84, 90). At his hearing, plaintiff testified that he drives half of the week for ten to fifteen minutes at a time, but that his wife does all long distance driving. (R. 248). Plaintiff took two trips to Myrtle Beach, South Carolina, traveling once by car the second time by air. (R. 249, 252-53). The flight took two hours, with a two hour layover. (R. 252-53). The drive took about two to three days in order for plaintiff and his family to make frequent stops in order for plaintiff to be able to rest. (R. 249).

   Plaintiff alleges that he is in constant pain on a daily basis. (R. 89, 231). On a scale of one to ten, plaintiff states that his pain is always at a level five, but on a bad day, it's a level eight. (R. 231). Plaintiff testified that his pain is in his lumbar region and travels down his left leg. (R. 231). Plaintiff also testified that his pain is aggravated by the weather, and that medication dulls the pain but does not make it go away. (R. 89, 231). In addition to blood pressure medication and medication for his depression, plaintiff takes 550 milligrams of Hydrocodone every six hours for pain. (R. 236-238). Side affects include sleepiness and irritability. (R. 238). Plaintiff testified that in addition to taking medication, he has seen a chiropractor, and used heat, topical medications, and a TENS unit to treat his pain. (R. 240-243.) Plaintiff also lays down for an hour or so every day to help relieve his pain. (R. 241).

   On September 17, 2003, Berton Shayevitz, M.D., an orthopedic consultative examiner, concluded that plaintiff's prognosis is "stable to poor" and that due to

4

plaintiff's back and leg pain, he is "just about markedly limited in terms of sitting, standing, walking, carrying, lifting, and climbing[,]" and that plaintiff's degenerative arthritis in his left knee "possibly moderately limit[s] him in mobility and ability to climb, squat and kneel."  (R. 166).  In March 2003, Clifford B. Soults, M.D., plaintiff's treating neurosurgeon, opined post surgery that plaintiff "can work with light duty, less than 20 pounds at this time" and that plaintiff "will need job retraining." (R. 146)  In August 2003, after noting a return of plaintiff's pain post surgery, Dr. Soults took plaintiff out of work and began job retraining.  (R. 142).  In October 2003, Dr. Soults noted that he suspects plaintiff "will never be able to return to his previous line of employment."  (R. 201).

Regarding plaintiff's mental impairment, consultative psychiatric examiner Kristen Barry, Ph.D., opined that he is able to follow and understand simple directions and instructions and maintain attention and concentration.  (R. 157-158, 161-162 ).  Richard B. Weiss, M.D., who completed a mental RFC assessment of plaintiff, noted that plaintiff is moderately limited in his ability to carry out detailed instructions and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as well as his ability to set realistic goals or make plans independently of others.  (R. 183-185).  In all other respects, Dr. Weiss found plaintiff's mental abilities are not significantly limited.  (R. 183-185).

According to Thomas Spath, M.D., plaintiff's treating physician, plaintiff is able to walk ten to fifteen minutes, sit thirty minutes and lift twenty pounds.  Dr. Spath noted that plaintiff is unable to return to his prior occupation, and "remains

disabled at [the] present time." (R. 137-138). Dr. Spath further indicated that plaintiff is limited in his abilities in that he can stand and/or walk less than two hours per day, sit up to six hours per day, and is limited (without specification) in his ability to push and/or pull. (R. 140).

After a July 2003 evaluation of plaintiff, Ronald Naumann, M.D. concluded that pursuant to Workers' Compensation guidelines, plaintiff has a marked, partial disability. (R. 196). Dr. Naumann further recommended that plaintiff be referred to VESID as soon as possible. (R. 197).

Finally, plaintiff's chiropractor, Dr. Eric Szatko, opined that plaintiff can stand and/or walk as well as sit less than two hours per day, that plaintiff cannot push or pull more than ten pounds, cannot use foot controls on his left side due to muscle weakness, and cannot bend, stoop, crawl or climb. (R. 129).

## *IV. Discussion*

This court does not review a final decision of the Commissioner *de novo*, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citation omitted). See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). When determining whether substantial evidence supports the Commissioner's decision, a court evaluates the record as a whole. See Curry v. Apfel, 209 F.3d 117, 121 (2d Cir. 2000) (internal citation omitted). "Substantial evidence" is evidence that amounts to "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)). "An ALJ must set forth the crucial

6

factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-445 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall [...] enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner [...], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  See also Butts, 388 F.3d at 385.

An individual is "disabled" for purposes of his eligibility for SSDI if he is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d).  The Commissioner may deem an individual applicant for SSDI to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d).

SSA regulations set forth a five-step sequential evaluation process, by which

the Commissioner is to determine whether an applicant for SSDI is disabled pursuant to the aforementioned statutory definition. See 20 C.F.R. § 404.1520. The Second Circuit Court of Appeals aptly summarizes this process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

     Here, the ALJ first found that plaintiff did not engage in substantial gainful activity at any time since his alleged disability onset date. (R. 20). Next, the ALJ concluded that plaintiff's traumatic and degenerative disc disease with epidural injection site scarring, hypertension, obesity, and chronic depression are severe. (R. 20-21). The ALJ next found that plaintiff's impairments are not listed in Appendix

8

1 of the regulations. (R. 21-22). Finally, the ALJ concluded that while plaintiff possesses the residual functional capacity ("RFC") to perform a limited range of simple, unskilled sedentary exertional activity, subject to limitations, (R. 24), the exertional requirements of his past relevant work as a heavy construction equipment operator, truck driver and trash collector are heavy in nature and therefore exceed his current RFC, (R. 25). Taking into consideration plaintiff's age, education and past relevant work experience as well as the testimony of a vocational expert, the ALJ concluded that because plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy, a finding of "not disabled" is warranted. (R. 26).

Plaintiff opposes the ALJ's determination that he is not disabled within the meaning of the Social Security Act for the following reasons. Plaintiff alleges that when determining his RFC, (1) the Commissioner failed to properly consider and weigh the opinions of plaintiff's treating physicians; and (2) the Commissioner erred in concluding that plaintiff's subjective complaints and allegations of disabling pain are not supported by substantial evidence. The Commissioner opposes plaintiff's contentions, and argues that substantial evidence supports the decision that plaintiff was not disabled from his alleged onset date, July 8, 2002, through August 12, 2004, the date of the Commissioner's final decision.

The ALJ concluded that plaintiff retains the RFC to perform a limited range of simple, unskilled sedentary exertional activity, subject to the following limitations:

> no use of left lower extremity for pushing or pulling such as to operate foot controls; no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling; sit/stand option to change position

> every 30 to 45 minutes; moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length o[f] rest periods; moderate limitations in sustained concentration that limits only the ability to understand, remember and carry out detailed and complex job instructions; and a reading and writing ability at the third grade level.

(R. 24). Pursuant to SSA's regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). According to the ALJ, these limitations are supported by the opinions of Drs. Shayevitz, Barry, Weiss, and Soults. The ALJ, however, assigned little weight to the opinions of plaintiff's chiropractor, Dr. Szatko, and his treating physician, Dr. Spath. The ALJ further concluded that plaintiff's allegations of pain and subjective complaints are less than fully reliable.

### A. Evaluation of Plaintiff's Complaints

It is the province of the Commissioner, not the reviewing district court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Secretary, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). As long as the ALJ's findings are supported by substantial evidence, "the court must uphold [his] decision to discount a claimant's subjective complaints ... ." Id. (internal citations omitted).

Pursuant to Social Security Ruling 96-7p as well as section 20 C.F.R. 404.1529(c)(3), the ALJ, in evaluating an individual's symptoms, such as pain, shall

10

consider the following factors:

    1.    The individual's daily activities;
    2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
    3.    Factors that precipitate and aggravate the symptoms;
    4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
    5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
    6.    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
    7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996). See also 20 C.F.R. § 404.1529(c)(3).

According to the ALJ, plaintiff's allegations are less than fully reliable for a number of reasons. The ALJ notes that plaintiff's treating neurosurgeon, Dr. Soults, recommended that plaintiff be trained for lighter types of work. Next, the ALJ found that plaintiff's daily activities include abilities beyond his alleged limitations. Finally, the ALJ found that plaintiff's medications and treatments are not consistent with his alleged limitations. (R. 24).

Plaintiff argues that the ALJ erred in finding his testimony not credible while

11

failing to obtain the opinion of any treating or consultative physician regarding the pain and symptoms experienced by plaintiff and whether such pain and symptoms could contribute to plaintiff's inability to perform work-related functions.

To be sure, both Dr. Shayevitz , the consultative orthopedic examiner, as well as Dr. Soults, plaintiff's treating neurosurgeon, noted plaintiff's pain in formulating their opinions. (R. 166, 142). In fact, Dr. Soults, noting a return of plaintiff's pain in his August 2003 treatment notes, took plaintiff out of work and began job retraining. (R. 142). Accordingly, Dr. Soults felt plaintiff was able to work with his then symptoms, including pain.

Moreover, at the hearing in this matter, the ALJ queried plaintiff regarding each of the aforementioned factors to be considered when evaluating a claimant's symptoms. In his decision, the ALJ noted that plaintiff's responses regarding his daily activities are not consistent with his alleged limitations. For example, plaintiff alleges that he can stand or walk up to two hours and can sit up to two hours in an eight hour workday, but also alleged that he prepares two meals per day and helps with preparation of a third meal, does some house cleaning, and goes grocery shopping one to two times per week, typically for one to two hours at a time. Plaintiff also testified that he took two trips to Myrtle Beach, one via car and the other by air. Accordingly, the ALJ's finding that plaintiff's complaints are less than credible is supported by substantial evidence and will not be disturbed by this court. Therefore, plaintiff's motion for judgment on the pleadings is denied in this regard.

### *B.  Treating Physician Rule*

A treating physician's opinion is entitled to "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(d)(2).  See also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).  Where less than controlling weight is assigned to a treating physician's opinion, the ALJ must consider a number of factors, including, among others,

> the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

Id. (quoting 20 C.F.R. § 404.1527(d)(2)) (quotations omitted).  After considering these factors, "the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion."  Burgess, 537 F.3d at 129 (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir.2004)).  Where the opinion of a treating physician is not consistent with other substantial evidence in the record, such as the opinions of other medical experts, and is not based on clinical findings, the ALJ is not compelled to assign controlling weight to that opinion.  See Owens v. Astrue, No. 5:06-CV-0736, 2009 WL 3698418, at *3 (N.D.N.Y. Nov. 3, 2009) (citing Halloran, 362 F.3d at 32; 20 C.F.R. § 404.1527(d)(3)).

     Here, the record shows that plaintiff's patient-physician relationship with Dr. Spath began in March 1990 and continued through at least August 2003.  (R. 137-141).  In September 2003, Dr. Spath responded to a request from SSA for clarification of his statements about plaintiff's ability to do work-related activities.  Despite plaintiff's long relationship with Dr. Spath, as well as the inference that other of Dr. Spath's records regarding his treatment of plaintiff were submitted to

13

SSA, the record now before this court is devoid of any notes or medical records from Dr. Spath, except his September 2003 response regarding plaintiff's work related abilities.  Nonetheless, Dr. Spath did respond to SSA's request for clarification, and stated that plaintiff is able to walk ten to fifteen minutes, sit thirty minutes and lift twenty pounds.  Dr. Spath noted that plaintiff is unable to return to his prior occupation, and "remains disabled at [the] present time."  (R. 137-138).  Dr. Spath further indicated that plaintiff is limited in his abilities in that he can stand and/or walk less than two hours per day, sit up to six hours per day, and is limited (without specification) in his ability to push and/or pull.  (R. 140).  Although the ALJ noted his agreement with Dr. Spath that plaintiff cannot return to his past work, he assigned little weight to the remainder of Dr. Spath's opinion because it "relies heavily upon [plaintiff's] report of his alleged limitations."  (R. 24).

Paintiff's chiropractor, Dr. Eric Szatko, reported that he saw plaintiff one to three times per week from January 25, 2001 through at least August 2003.  (R. 126).  According to Dr. Szatko, plaintiff can stand and/or walk and can sit less than two hours per day, is unable to push and/or pull above ten pounds, is unable to use foot controls on his left side due to weakness, and is unable to bend, stoop, crawl or climb.  (R. 129).  The ALJ concluded that Dr. Szatko's opinion is entitled to very little weight because it is contrary to the opinions of Dr. Shayevitz and Soults as well as the overall medical record.  (R. 24).

To be sure, according to the regulations, a chiropractor's opinion is not a medical opinion, and consequently a chiropractor such as Dr. Szatko cannot be deemed a treating source whose opinion is entitled to controlling weight.  See Diaz

14

v. Shalala, 59 F.3d 307, 312-314 (2d Cir. 1995).  See also 20 C.F.R. §§ 404.1527; 404.1513.  That is not to say, however, that an ALJ should completely ignore such opinion evidence.  See Zahirovic v. Astrue, No. 6:06-CV-981, No. 2008 WL 4519198, at * 8 (N.D.N.Y. Sept. 30, 2008).  In fact, the regulations provide that an ALJ may use evidence from other medical sources such as chiropractors in order to determine how a claimant's impairment affects his or her ability to work.  See id.; 20 C.F.R. § 404.1513.  Nonetheless, here, Dr. Szatko's opinion that plaintiff can stand and/or walk for less than two hours and can sit for less than two hours in an eight hour workday and that plaintiff is completely limited in his ability to bend, stoop, crawl or climb, is contradicted by the opinions of Drs. Soults and Shayevitz, as well as plaintiff's own allegations regarding his daily activities.  Accordingly, the ALJ's assessment of Dr. Szatko's opinion is supported by substantial evidence.

The ALJ also concluded that Dr. Spath's opinion is entitled to "very little weight as it relies heavily on [plaintiff's] report of his alleged limitations."  (R. 24).  While the ALJ's reasoning in this regard is faulty, such error is harmless as his ultimate conclusion regarding plaintiff's RFC is supported by substantial evidence.  Here, Dr. Spath opined that plaintiff could lift twenty pounds, an opinion shared by Dr. Soults.  Plaintiff, however, alleged that he could only lift five to ten pounds.  Also, while plaintiff alleged that he could only sit up to two hours in an eight hour workday, Dr. Spath opined that plaintiff could sit up to six hours.  In fact, the ALJ's RFC determination contradicts Dr. Spath's opinion only insofar as plaintiff's limitations in standing and/or walking are concerned.  Where Dr. Spath notes that plaintiff can only walk for ten to fifteen minutes at a time and can stand and/or walk less than two hours in an eight hour workday, the RFC limitations include a

15

"sit/stand option to change position every 30 to 45 minutes." (R. 24). Plaintiff's own allegations regarding his daily activities, including cooking, cleaning, and travel, as well as the opinions of Drs. Soults and Naumann that plaintiff is in need of job retraining belie this portion of Dr. Spath's opinion, and support the stated RFC. Accordingly, because the ALJ's RFC determination is supported by substantial evidence, plaintiff's motion for judgment on the pleadings is denied in this regard as well.

### *V. Conclusion*

For the reasons set forth above it is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is GRANTED, and it is further

ORDERED that plaintiff's motion for judgment on the pleadings is DENIED, and it is further

ORDERED that plaintiff's complaint is DISMISSED with prejudice.


IT IS SO ORDERED.


DATED:   November 25, 2009
         Syracuse, New York


_____
Neal P. McCurn
Senior U.S. District Judge

16